# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

ZEPHERINE MILLER, an individual,

     Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC, a Georgia limited liability company; EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio corporation; and TRANS UNION LLC, a Delaware limited liability company,

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Zepherine Miller, an individual ("**Plaintiff**"), files her Complaint and Jury Demand against Defendants Equifax Information Services, LLC, a Georgia limited liability company ("**Equifax**"); Experian Information Solutions, Inc., an Ohio corporation ("**Experian**"); and Trans Union LLC, a Delaware limited liability company ("**Trans Union**") (collectively, the "**Consumer Reporting Agencies**"), and states as follows.

## I.    INTRODUCTION

1. This is an action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("**FCRA**") for actual, statutory, and punitive damages resulting from the Consumer Reporting Agencies' inaccurate credit reporting and failure to reinvestigate Plaintiff's disputes of that inaccurate reporting.

2. Plaintiff had applied to rent an apartment in a complex located in Denver, Colorado. When she signed her lease, the lease did not include a security deposit. After signing the lease, the landlord unilaterally added a security deposit and refused to give Plaintiff the keys to the apartment until Plaintiff paid a deposit that she did not agree to.

3. Plaintiff did not pay this unilateral and undisclosed charge, so the landlord claimed that Plaintiff was in default and forwarded the balance of the lease to its collection agency, National Credit Systems, Inc. (the "**Debt Collector**").  The Debt Collector reported this invalid debt to the Consumer Reporting Agencies, harming Plaintiff's credit standing. Due to this injustice, Plaintiff sued the landlord and obtained a judicial declaration that the lease was void.  Plaintiff duly notified the Consumer Reporting Agencies that a court had declared that Plaintiff did not owe anything and the lease obligation was void.  The Consumer Reporting Agencies failed to reinvestigate Plaintiff's disputes and continued their inaccurate reporting.

## II.    PARTIES, JURISDICTION, AND VENUE

4. Plaintiff is an individual, natural person and resides in Oklahoma County, Oklahoma.

5. Plaintiff is, and was, at all relevant times a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. Equifax is a Georgia limited liability company with a principal place of business at 1550 Peachtree St NE, Atlanta, GA 30309 and a registered agent of Corporation Service Company at 1900 W Littleton Blvd, Littleton, CO 80120.

7. Equifax regularly conducts business in the State of Colorado.

8. Experian is an Ohio corporation with a principal place of business at 475 Anton Blvd, Costa Mesa, CA 92626 and a registered agent of Corporation Service Company at 7700 E Arapahoe Rd Ste 220, Centennial, CO 80112.

9. Experian regularly conducts business in the State of Colorado.

10. Trans Union is a Delaware limited liability company with a principal place of business at 555 West Adams Street, Chicago, IL 60661 and a registered agent of C T Corporation System at 1900 W Littleton Blvd, Littleton, CO 80120.

11. Trans Union regularly conducts business in the State of Colorado.

12. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

2

13.     Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

14.     Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

15.     This Court has jurisdiction over the claims brought hereunder pursuant to 15 U.S.C. § 1681p.

16.     This Court has jurisdiction over the non-resident Consumer Reporting Agencies pursuant to C.R.S. § 13-1-124.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

### III.     FACTUAL ALLEGATIONS

*Background*

18.     Plaintiff was allegedly obligated to pay a debt (the "**Account**") arising out of a purported residential lease with The Connor Group, a Real Estate Investment Firm d/b/a The Connor Group d/b/a Alas Over Lowry (the "**Landlord**").

19.     The Account is an obligation that was allegedly incurred primarily for personal, family, or household purposes.

20.     The Landlord claimed that Plaintiff owed the Account based upon her failure to fulfil the terms of the residential apartment lease.

21.     Plaintiff was not obligated to fulfil the terms of the lease because the Landlord had unilaterally added a security deposit to the lease after the lease was signed.

22.     The Landlord claimed that Plaintiff had failed to perform under the Lease by not paying the security deposit that the Plaintiff did not agree to pay.

23.     The Landlord claimed that Plaintiff was liable for the entire balance of the Lease.

24.     Based on its incorrect understanding that Plaintiff was liable on the Account, the Landlord referred (but did not sell) the Account to the Debt Collector for collection purposes.

3

25.     After the Landlord referred the Account to the Debt Collector, Plaintiff sued the Landlord in Denver District Court, Case No. 2021CV34094 (the "**Landlord Lawsuit**").

26.     In the Landlord Lawsuit, Plaintiff sought and obtained a declaration that Plaintiff was not obligated to the Landlord under the lease.

27.     On January 30, 2023, the Court entered judgment in the Landlord Lawsuit declaring that: "Plaintiff is not obligated to [the Landlord] under the subject lease agreement and the lease agreement is void."

28.     Plaintiff does not owe the Landlord any money.

29.     Plaintiff does not owe the Debt Collector any money.

30.     Even after the Denver District Court declared that the lease was void and Plaintiff had no obligation under the lease to the Landlord, the Debt Collector continued to report the Account to the Consumer Reporting Agencies.

*Disputes with Equifax*

31.     On April 4, 2023, Equifax received a written dispute of the credit information that the Debt Collector was furnishing to Equifax concerning the Account.

32.     This dispute included, among other things, a copy of the Landlord Lawsuit; a written explanation connecting the Debt Collector, the Account, and the Landlord; and the judgment declaring the subject lease void.

33.     The dispute included, among other things, contact information for third-parties who could verify the accuracy of the facts stated in Plaintiff's dispute.

34.     In response to Plaintiff's dispute, Equifax did not conduct any reinvestigation.

35.     On April 6, 2023, Equifax responded to Plaintiff's dispute and verified that the information that the Debt Collector was furnishing to Equifax was accurate.

36.     The information that the Debt Collector was furnishing to Equifax was not accurate.

37.     Equifax continued to report the Account on Plaintiff's credit reports.

4

38. On May 23, 2023, Plaintiff again disputed the account with Equifax, this time by telephone.

39. In response to Plaintiff's dispute, the only reinvestigation that Equifax conducted was sending an "Automated Credit Dispute Verification" or "ACDV" to the Debt Collector.

40. Equifax did not investigate any of the reasons or facts Plaintiff supplied to Equifax that would have caused Equifax to conclude that Plaintiff was correct and the Debt Collector was incorrect.

41. On May 29, 2023, Equifax responded to Plaintiff's dispute and verified that the information that the Debt Collector was furnishing to Equifax was accurate.

42. The information that the Debt Collector was furnishing to Equifax was not accurate.

43. Equifax continued to report the Account on Plaintiff's credit reports.

*Disputes with Experian*

44. On April 6, 2023, Experian received a written dispute of the credit information that the Debt Collector was furnishing to Experian concerning the Account.

45. This dispute included, among other things, a copy of the Landlord Lawsuit; a written explanation connecting the Debt Collector, the Account, and the Landlord; and the judgment declaring the subject lease void.

46. The dispute included, among other things, contact information for third-parties who could verify the accuracy of the facts stated in Plaintiff's dispute.

47. In response to Plaintiff's dispute, the only reinvestigation that Experian conducted was sending an ACDV to the Debt Collector.

48. On April 24, 2023, Experian responded to Plaintiff's dispute and verified that the information that the Debt Collector was furnishing to Experian was accurate.

49. The information that the Debt Collector was furnishing to Experian was not accurate.

50.     Experian continued to report the Account on Plaintiff's credit reports.

*Disputes with Trans Union*

51.     On April 6, 2023, Trans Union received a written dispute of the credit information that the Debt Collector was furnishing to Trans Union concerning the Account.

52.     This dispute included, among other things, a copy of the Landlord Lawsuit; a written explanation connecting the Debt Collector, the Account, and the Landlord; and the judgment declaring the subject lease void.

53.     The dispute included, among other things, contact information for third-parties who could verify the accuracy of the facts stated in Plaintiff's dispute.

54.     In response to Plaintiff's dispute, the only reinvestigation that Trans Union conducted was sending an ACDV to the Debt Collector.

55.     On April 24, 2023, Trans Union responded to Plaintiff's dispute and verified that the information that the Debt Collector was furnishing to Trans Union was accurate.

56.     The information that the Debt Collector was furnishing to Trans Union was not accurate.

57.     Trans Union continued to report the Account on Plaintiff's credit reports.

58.     On May 23, 2023, Trans Union received an oral dispute of the credit information that the Debt Collector was furnishing to Trans Union concerning the Account.

59.     In response to Plaintiff's dispute, the only reinvestigation that Trans Union conducted was sending an ACDV to the Debt Collector.

60.     Trans Union did not investigate any of the reasons or facts Plaintiff supplied to Equifax that would have caused Equifax to conclude that Plaintiff was correct and the Debt Collector was incorrect.

61.     On May 28, 2023, Trans Union responded to Plaintiff's dispute and verified that the information that the Debt Collector was furnishing to Trans Union was accurate.

62.     The information that the Debt Collector was furnishing to Trans Union was not accurate.

63.     Trans Union continued to report the Account on Plaintiff's credit reports.

*Allegations Pertinent to Each Dispute*

64.     At the time the Consumer Reporting Agencies received Plaintiff's disputes described above, Plaintiff did not owe anything to the Debt Collector on the subject Account.

65.     At the time the Consumer Reporting Agencies received Plaintiff's disputes described above, Plaintiff did not owe anything to the Landlord on the subject Account.

66.     In response to the Plaintiff's disputes described above, the Consumer Reporting Agencies relied on the Debt Collector rather than conducting a reasonable reinvestigation or simply verifying the court records that declared that Plaintiff did not owe the Account.  In at least one instance, Equifax did not even rely on the Debt Collector at all, and just ignored the dispute altogether.

67.     In response to Plaintiff's disputes described above, the Consumer Reporting Agencies did not review the relevant information provided by Plaintiff.

68.     In response to Plaintiff's disputes described above, the Consumer Reporting Agencies did not contact any of the individuals who could verify the accuracy of Plaintiff's Dispute.

69.     All of the true facts were made available to the Consumer Reporting Agencies by Plaintiff's disputes.

70.     To the extent that the Consumer Reporting Agencies needed additional information to reinvestigate Plaintiff's disputes, the Consumer Reporting Agencies had the resources to reinvestigate Plaintiff's dispute.

71.     The Consumer Reporting Agencies could have, and should have, conducted a reasonable reinvestigation to determine the subject reporting was inaccurate.

72.     The Consumer Reporting Agencies failed to review and consider all of the information provided to the Consumer Reproting Agencies by Plaintiff.

73.     The Consumer Reporting Agencies failed to search for information reasonably available and accessible to the Consumer Reporting Agencies.

74.    The Consumer Reporting Agencies were aware of regulatory findings, opinions, court rulings and jury verdicts that the type of "reinvestigation" the Consumer Reporting Agencies conducted was insufficient to constitute a reasonable reinvestigation.

75.    The Consumer Reporting Agencies acted with reckless disregard for their statutory duties.

76.    The Consumer Reporting Agencies knowingly and intentionally committed the acts described herein in conscious disregard for the rights of others.

77.    All conditions precedent necessary for this lawsuit have occurred or been performed by Plaintiff.

78.    The Consumer Reporting Agencies' failure to reinvestigate Plaintiff's disputes are willful and reckless.

79.    As a result of the inaccurate credit reporting and failure to conduct reasonable reinvestigations, Plaintiff has suffered damages, including, but not limited to: monies lost by attempting to fix her credit; loss of time attempting to cure the error; mental anguish, stress, aggravation, embarrassment, and other related impairments to the enjoyment of life; and the inability to obtain financing for a house.

## COUNT I
### (Violations of the FCRA, 15 U.S.C. § 1681 *et seq.* against Equifax)

80.    Plaintiff incorporates by reference the allegations of paragraphs 1-43 and 64-79 as though fully set forth herein.

81.    Plaintiff is a "consumer", as that term is defined by 15 U.S.C. § 1681a(c).

82.    Plaintiff disputed the Account.

83.    Equifax took no independent action to reinvestigate the dispute or to determine whether Plaintiff owed the Account.

84.    Equifax failed to reinvestigate Plaintiff's dispute despite Plaintiff providing all the necessary information to conduct a reinvestigation. Equifax chose to ignore all the information provided in the dispute and/or rely solely on the information provided by the

Debt Collector or simply not to reinvestigate at all. Plaintiff even provided her contact information and contact information for third parties who could support her dispute, but Equifax made no attempt to contact her or them to obtain any additional information if any was needed.

85.    Equifax chose to ignore this information and simply parroted the information provided by the Debt Collector.

86.    Equifax violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

87.    Plaintiff had obtained a court order stating that she did not owe the Account and provided that order to Equifax.  Equifax had actual knowledge that Plaintiff did not owe the Account and a court had ordered as much yet Equifax's procedure allowed for the Account to be reported on Plaintiff's credit report despite the fact that a court had declared that she did not owe it.

88.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

89.    As a result of Equifax's conduct, action and inaction, Plaintiff suffered actual damages in the form of lost loan and credit opportunities, credit denials, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Equifax, as well as emotional distress.

90.    Equifax's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o. Plaintiff is entitled to recover her reasonable attorney fees and costs.

## COUNT II
### (Violations of the FCRA, 15 U.S.C. § 1681 *et seq.* against Experian)

91.    Plaintiff incorporates by reference the allegations of paragraphs 1-30, 44-50, and 64-79 as though fully set forth herein.

92.    Plaintiff is a "consumer", as that term is defined by 15 U.S.C. § 1681a(c).

93.    Plaintiff disputed the Account.

94.    Experian took no independent action to reinvestigate the dispute or to determine whether Plaintiff owed the Account.

95.    Experian failed to reinvestigate Plaintiff's dispute despite Plaintiff providing all the necessary information to conduct a reinvestigation. Experian chose to ignore all the information provided in the dispute and/or rely solely on the information provided by the Debt Collector. Plaintiff even provided her contact information and contact information for third parties who could support her dispute, but Experian made no attempt to contact her or them to obtain any additional information if any was needed.

96.    Experian chose to ignore this information and simply parroted the information provided by the Debt Collector.

97.    Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

98.    Plaintiff had obtained a court order stating that she did not owe the Account and provided that order to Experian.  Experian had actual knowledge that Plaintiff did not owe the Account and a court had ordered as much yet Experian's procedure allowed for the Account to be reported on Plaintiff's credit report despite the fact that a court had declared that she did not owe it.

99.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

100.    As a result of Experian's conduct, action and inaction, Plaintiff suffered actual damages in the form of lost loan and credit opportunities, credit denials, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Experian, as well as emotional distress.

101.    Experian's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.  Plaintiff is entitled to recover her reasonable attorney fees and costs.

## COUNT II
### (Violations of the FCRA, 15 U.S.C. § 1681 *et seq.* against Trans Union)

102.    Plaintiff incorporates by reference the allegations of paragraphs 1-30, and 51-79 as though fully set forth herein.

103.    Plaintiff is a "consumer", as that term is defined by 15 U.S.C. § 1681a(c).

104.    Plaintiff disputed the Account.

105.    Trans Union took no independent action to reinvestigate the dispute or to determine whether Plaintiff owed the Account.

106.    Trans Union failed to reinvestigate Plaintiff's dispute despite Plaintiff providing all the necessary information to conduct a reinvestigation. Trans Union chose to ignore all the information provided in the dispute and/or rely solely on the information provided by the Debt Collector. Plaintiff even provided her contact information and contact information for third parties who could support her dispute, but Trans Union made no attempt to contact her or them to obtain any additional information if any was needed.

107.    Trans Union chose to ignore this information and simply parroted the information provided by the Debt Collector.

11

108.    Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

109.    Plaintiff had obtained a court order stating that she did not owe the Account and provided that order to Trans Union.  Trans Union had actual knowledge that Plaintiff did not owe the Account and a court had ordered as much yet Trans Union's procedure allowed for the Account to be reported on Plaintiff's credit report despite the fact that a court had declared that she did not owe it.

110.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

111.    As a result of Trans Union's conduct, action and inaction, Plaintiff suffered actual damages in the form of lost loan and credit opportunities, credit denials, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Trans Union, as well as emotional distress.

112.    Trans Union's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Trans Union was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.  Plaintiff is entitled to recover her reasonable attorney fees and costs.

**JURY DEMAND**

Plaintiff is entitled to and hereby demands a trial by jury.

WHEREFORE, Plaintiff Zepherine Miller, an individual, prays for judgment against Defendants Equifax Information Services, LLC, a Georgia limited liability company; Experian Information Solutions, Inc., an Ohio corporation; and Trans Union LLC, a Delaware limited liability company, individually, as follows:

1.    Awarding Plaintiff actual damages in an amount to be proven at trial;

2.      Awarding Plaintiff statutory damages in an amount to be proven at trial;

3.      Awarding Plaintiff punitive damages in an amount to be proven at trial;

4.      Awarding Plaintiff pre-judgment and post-judgment interest as may be allowed
        under the law;

5.      Awarding Plaintiff her reasonable attorney fees;

6.      Awarding Plaintiff's costs; and

7.      Awarding such other and further relief as the Court may deem just and proper.

Dated: March 31, 2025

**Vedra Law LLC**

By:     /s/ Daniel J. Vedra
        Daniel J. Vedra
        1444 Blake Street
        Denver, Colorado 80202
        303-937-6540
        dan@vedralaw.com
        *Attorneys for Plaintiff*

13